UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CYNTHIA GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:13-00863 |
| | ) Judge Sharp |
| CLARKSVILLE HEALTH | ) |
| SYSTEM, G.P., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Defendant Clarksville Health System, G.P., which does business under the name Gateway Medical Center, has filed a Motion for Summary Judgment (Docket No. 17) on Plaintiff Cynthia Gray's claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, and the Tennessee Human Rights Act ("THRA"), 4-21-101 *et seq.* Plaintiff opposes the Motion, at least with respect to her FMLA claims. (Docket No. 23). For the reasons that follow, the Motion will be granted.[1]

## I. FACTUAL BACKGROUND

Gateway Medical Center is a hospital located in Clarksville, Tennessee. In 1978, the hospital hired Plaintiff as a technician. After Plaintiff became a licensed practical nurse the following year,

---

[1] Defendant's Motion to Strike (Docket No. 27) the Declaration filed by Plaintiff in support of her response to Defendant's Statement of Fact will be denied. In the Motion, Defendant seeks to strike certain paragraphs of Plaintiff's Declaration because they allegedly contradict her deposition testimony. While it is true that a party cannot "avoid[] summary judgment by simply filing an affidavit that directly contradicts that party's previous testimony," Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 907 (6th Cir. 2006), as this Court has pointed out in other cases, "motions to strike are generally disfavored, and rather than striking material, a court may ignore inadmissible evidence." Branch Banking & Trust Co. v. Fidelity Nat. Title Ins. Co., 2013 WL 6844653, at *5 (M.D. Tenn. Dec. 30, 2013) (collecting cases). Where necessary, the Court will note apparent discrepancies between Plaintiff's deposition testimony and her declaration.

1

she was employed at the hospital as an LPN. She worked in that capacity from 1979 to 2012.

For approximately the last 10 years of her employment with the hospital, Plaintiff was a staff nurse on a medical/surgery floor. In March 2012, Plaintiff's immediate supervisor was Pat Williams, the director of medical/surgery and rehabilitation. During all relevant times, Plaintiff worked the 7 p.m. to 7 a.m. shift three times a week. The specific work days varied from week to week.

Plaintiff took FMLA leave several times during her employment at the hospital, including every year from 2007 to 2011. By March 2012, Plaintiff had received a number of Employee Disciplinary Action Notices alleging excessive absences, including a March 9, 2008 written warning for accruing more than five absences in a 12-month period; an October 1, 2009 documented verbal warning for accruing at least six unexcused absences in a 12-month period; a February 17, 2010 written warning for allegedly accruing at least seven unexcused absences in a 12-month period; and a May 3, 2011 documented verbal warning for accruing five unexcused absences in a 12-month period.

On April 5, 2012, Jennifer Waldorf, Plaintiff's floor supervisor, gave Plaintiff a final written warning for allegedly accumulating seven unexcused absences in a 12-month period.[2] Ms. Waldorf met with Plaintiff, gave her a copy of the final written warning, discussed with Plaintiff the number of unexcused absences, and told Plaintiff it was her final written warning.

On May 1, 2012, Plaintiff was discharged for allegedly accumulating 10 absences in a 12-month period. Those absences were listed as (1) May 31, 2011, (2) July 26, 2011, (3) August 19-20, 2011, (4) October 19, 2011, (5) February 21, 2012, (6) March 4, 2012, (7) March 16-18,

---

[2] While Plaintiff admits receiving this warning, she claims that some of the absences should have been FMLA qualifying, or should have been approved exceptions to her work schedule in accordance with the hospital's attendance policy.

2012, (8) March 30, 2012-April 1, 2012, (9) April 25, 2012, and (10) April 29, 2012.

Turning to specifics, Plaintiff was assessed an unexcused absence for Sunday, March 4, 2012. Defendant claims that Plaintiff, who was scheduled to work the 7 p.m. shift that day, discussed being absent with Angel Shapman, a supervisor, telling Ms. Shapman that she would not be at work that night because her daughter, Ashleigh[3] was in labor at the hospital. Plaintiff claims that she told Ms. Shapman she would not be in because she had been at the hospital since 11p.m. the night before, and her daughter was going to have a premature baby. Regardless, Plaintiff asked Ms. Shapman what she could do to have her absence excused. Plaintiff was told that she needed to find someone to cover the shift for her, otherwise, in accordance with hospital policy, the absence would be unexcused. Plaintiff did not find anyone to cover her shift.[4]

Ashleigh gave birth to a baby boy, Weston, on March 4, 2012. Apart from Weston being eight weeks premature, the birth was a normal delivery and Ashleigh was not placed on any medical restrictions when she was discharged from the hospital three days later.

Plaintiff's next absence from work occurred on March 16-18, 2012, when Weston was in the neonatal intensive care unit at Gateway Medical Center. While Ashleigh stayed at the hospital with Weston, Plaintiff watched her other three grandchildren at home. Plaintiff asked Dianne McGregor, Defendant's Human Resource Manager, for FMLA or emergency leave on March 16, 2012, but was told that the absence was not FMLA qualifying.

---

[3] For the past six years, Plaintiff has resided with her adult daughter, Ashleigh Johnson (age 31), her son-in-law (and Ashleigh's husband) Ronnie Jay Johnson, and her grandchildren, Peyton Johnson (age 10), Bryleigh Johnson (age 6), Camdynn Johnson (age 4), and Weston Johnson (age 2).

[4] In her deposition, Plaintiff conceded that she did not even try to call anyone to cover her shift because she was at the hospital and did not have her co-workers' telephone numbers with her. (Docket No. 17-1, Pf. Depo. at 22). In her declaration filed in response to Defendant's Motion for Summary Judgment, Plaintiff suggests the contrary, stating "[i]n compliance with the Hospital attendance policy, I made efforts to obtain coverage for these shifts." (Docket No. 24-1, Pf. Dec. ¶ 7).

3

Plaintiff was next absent from March 30, 2012 to April 1, 2012 because her house flooded, a condition which was discovered when Plaintiff and her family returned from an out-of-state dance team trip. Plaintiff again contacted Ms. McGregor to ask if there was a hospital policy for "emergency disasters," but was informed there was not. Plaintiff did not find another employee to cover her shift on March 30, and so her absence for that day was listed as unexcused.

Plaintiff was again absent from work on April 25, 2012 when her granddaughter Camdynn was hospitalized. Camdynn was hospitalized from April 23, 2012 through April 25, 2012, during which time Ashleigh stayed at the Hospital while Plaintiff took care of her other grandchildren at home.

Plaintiff was again absent from work on Sunday, April 29, 2012. The day before, she and Jay Johnson took Ashleigh to Vanderbilt Psychiatric Hospital, returning to their home in Clarksville at 1 a.m. on the 29th. Plaintiff informed a supervisor that she would not be working her shift that night. She did not visit Ashleigh that day.

Under the hospital's written leave policy, employees "who have been employed by the facility for at least twelve months, and who have performed at least 1,250 hours of service during the 12 months immediately preceding the start date of the requested leave are eligible for FMLA leave." (Docket No. 17-3 at 16). Excluding the time Plaintiff was out on FMLA leave, Plaintiff worked 1,249 hours and 50 minutes from April 25, 2011 to April 25, 2012. From April 29, 2011 to April 29, 2012, Plaintiff worked 1,225 hours and 40 minutes at the hospital. During both periods, Plaintiff claims she worked more than the requisite 1,250 hours if the time she was on approved FMLA leave is added to the time she was actually at work.

After Plaintiff's absence on April 29, 2012, she was called to a meeting at the hospital. As indicated, she was terminated on May 1, 2012 for excessive absenteeism.

4

Based upon the foregoing, Plaintiff filed a Complaint in the Circuit Court of Montgomery County which was later removed to this Court. In the Complaint, Plaintiff alleges that Defendant violated both the FMLA and the THRA.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Cnty. School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. APPLICATION OF LAW

### A. FMLA Claims

The Sixth Circuit "recognizes two distinct theories of wrongdoing under the FMLA." Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007). "The 'entitlement' or 'interference' theory" makes "it unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights" and "require[s] the employer to restore the employee to the same or an equivalent position upon the employee's return." Id. "The 'retaliation' or 'discrimination' theory, on the other hand . . . prohibits an employer from discharging or discriminating against an employee for 'opposing any practice made unlawful by' the Act." Id. (internal citations omitted). Plaintiff brings both types of claims, which the Court now considers in the order presented by the parties.

#### 1. Retaliation

Where a Plaintiff presents no direct evidence of discrimination or retaliation, her claims are analyzed under the familiar McDonnell Douglas[5] burden-shifting framework. See Edgar v. JAC Prod., Inc., 443 F.3d 501, 508 (6th Cir. 2006). "[P]laintiff may make out a prima facie case by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." Bryson, 498 F.3d at 570. "If the plaintiff satisfies her prima facie showing, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." Id. "If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." Id.

As noted in the factual recitation, Defendant asserts that Plaintiff was terminated because she had 10 unexcused absences within a 12 month period, specifically, (1) May 31, 2011; (2) July 26, 2011; (3) August 19-20, 2011; (4) October 19, 2011; (5) February 21, 2012; (6) March 4, 2012; (7) March 16-18, 2012; (8) March 30, 2012-April 1, 2012; (9) April 25, 2012; and (10) April 29, 2012. Defendant has provided its rationale for deeming those dates unexcused absences and, in response, Plaintiff challenges only four of those dates.

Plaintiff first argues that her absence from August 19-20, 2011 should have been excused because she "requested an approved absence from her work schedule . . . due to the death of the father of her children" and notes that "bereavement leave is enumerated as an "approved exception to the work schedule.'" (Docket No. 23 at 4). How this advances Plaintiff's retaliation claim is unclear because she did not seek FMLA leave for this period and, in any event, "many federal courts

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

have held that bereavement leave or absence from work following the death of a family member is not protected under the FMLA." Torres v. Inspire Dev. Ctrs., 2014 WL 3697816, at *6 (E.D. Wash. 2014) (collecting cases); see also, Brown v. J.C. Penney Corp., 924 F. Supp. 1158, 1162 (S.D. Fla. 1996) ("Put simply, if Congress wanted to ensure that employees on FMLA leave could take additional time off after a family member died from a serious health condition, it easily could have said so in the statute").

In both her declaration and response brief, Plaintiff asserts that she requested leave during this period so that she could care for her adult daughter "who suffered from a significant mental health condition." (Docket No. 24-1, Gray Decl. ¶ 4). She does not allege,[6] much less establish, however, that her employer was informed that was the reason she needed leave – leave she admits was requested under the hospital's bereavement policy. See Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 852 (7th Cir. 2008) ("[T]he closest thing that [plaintiff] made to a request for medical leave was a request for time off to attend his nephew's funeral in India. This was not a request for sick time, however, and it is difficult to construe this as a request for FMLA leave").

It could be that Plaintiff disputes the August 19-20, 2011 dates in order to show pretext, that is, she would not have had ten unexcused absences in a twelve month period which purportedly was the reason for her termination. However, Defendant asserts that leave to attend a funeral for an ex-spouse[7] is not covered by its bereavement policy, and Plaintiff has not shown otherwise.

Plaintiff next challenges the March 4, 2012 unexcused absence when Plaintiff failed to report

---

[6] In her Complaint, Plaintiff specifies the dates on which she allegedly was wrongfully denied leave, but leave to attend a funeral is not among the allegations. As Defendant correctly notes, a party may not "seek[] to expand its claims to assert new theories . . . in response to summary judgment[.]" Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 399 (6th Cir. 2007).

[7] In her deposition, Plaintiff testified that she divorced Ashleigh's father in 1998.

7

to work while her daughter was in labor. In her deposition, Plaintiff testified that she called Ms. Shapman and

> I told her that we had been there [at the hospital] all night because we had brought [Ashleigh] in about 11:00 the night before; she was in labor; she was going to have a baby; and that I would not be there because the baby was premature; and what could I do to get it covered.

(Docket No. 17-1, Pf. Depo. at 21-22).

"'[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave' – 'nothing in the statute places a duty on an employer to affirmatively grant leave without such a request or notice by the employee.'" Miles v. Nashville Elec. Serv., 525 F. App'x 382, 385 (6th Cir. 2013) (quoting Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998)). The Sixth Circuit has "explained that 'the critical test' for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave" covered by the FMLA. Id. at 386 (quoting Brenneman v. MedCentral Health Sys., 366 F.3d 412, 421 (6th Cir. 2004)). "Although the employee need not expressly mention the FMLA, she must 'give[ ] the employer enough information for the employer to reasonably conclude that an event described in [the] FMLA ... has occurred.'" Id. (quoting Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir.1999)).

Plaintiff did not provide sufficient notice. All she said was that she had been up all night, that her daughter was in labor with a premature baby, and that she wanted to know what she could do to have her shift covered. See, Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1385 (11th Cir. 2005) (insufficient notice provided where plaintiff "merely expressed her desire to assist her adult daughter during the birth of her grandchild"). This deficiency in notice is compounded by the fact "that being pregnant, as opposed to being incapacitated because of pregnancy, is not a 'serious health condition'

8

within the meaning of the FMLA," and "[t]hus, the protections of the FMLA do not extend to an employee taking leave to care for his or her adult child simply because that child is pregnant, unless, for example, that child is incapacitated due to the pregnancy." Id. at 1384; see also, Spees v. James Marine, Inc., 617 F.3d 380, 396 (6th Cir. 2010) ("unanimous holding of the federal courts" is that "pregnancy, by itself, does not constitute a disability under the ADA"). This is because "[t]e FMLA authorizes leave to care for a child 18 years of age or older *only* if the child is suffering from a serious health condition *and* 'incapable of self-care because of a mental or physical disability'"; it "does not entitle an employee to leave in order to care for a grandchild." Novac v. MetroHealth Med. Ctr., 503 F.3d 572, 581 (6th Cir. 2007) (emphasis in original) (quoting 29 U.S.C. § 2611(12)(B)). Plaintiff has not shown that Ashleigh was incapable of caring for herself on March 4, 2012, or that Defendant was so informed.

Finally, Plaintiff argues that April 25 and 29, 2012 absences should have been deemed excused under the FMLA. However, this argument fails at the outset because she has not shown that she was qualified for FMLA leave on those dates.

"To be an 'eligible employee' under the [FMLA] an employee must have worked for her employer for at least twelve months and must have completed 'at least 1,250 hours of service with such employer during the previous 12-month period.'" Ricco v. Potter, 377 F3d 599, 601 n.2 (6th Cir. 2004) (quoting 29 U.S.C. § 2611(2)(A)). According to Defendant's record, from April 25, 2011 until April 25, 2012, Plaintiff worked 1,249 hour and 50 minutes at Gateway Medical Center and from April 29, 2011 until April 29, 2012, she worked 1,225 hours and 50 minutes.[8]

Plaintiff does not challenge the accuracy of Defendant's record, or its calculations. Rather,

---

[8] The approximately 25 hour period between these two periods is apparently due to the fact that Plaintiff did not work the last four days of the second period.

9

she argues that the hours are "clearly in dispute" because "Plaintiff did not receive appropriate credit hours for 12/9/2011, 12/15/2011, and 3/11/2012, dates conceded by Defendant to be proper FMLA qualifying dates." (Docket No. 23 at 9). However, "[p]aid vacation, holidays, sick leave, and FMLA leave are not included in the 1,250 hour calculation." Lyons v. North East Ind. Sch. Dist., 277 F. App'x 455, 457 (5th Cir. 2008) The Sixth Circuit has explained:

> To qualify as an "eligible employee" under the FMLA, the employee must have actually worked 1,250 hours. Although the FMLA does not define the term "hours of service," section 2611(2)(C) directs courts to the Fair Labor Standards Act ('FLSA') 29 U.S.C. § 2611(2)(C); Mutchler v. Dunlap Mem'l Hosp., 485 F.3d 854, 857 (6th Cir. 2007) ("In calculating the 'hours of service,' the Act [FMLA] incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207."). However, the FLSA also does not define the term "hours of service." Nonetheless, the FMLA's implementing regulations clarify that "[t]he determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA.... [A]ny accurate accounting of actual hours worked under FLSA's principles may be used." 29 C.F.R. § 825.110(c)(1) (emphasis added). Moreover, this court has cited Plumley v. Southern Container, Inc., 303 F.3d 364, 372 (1st Cir. 2002) for the conclusion that "hours of service," "include only those hours actually worked in the service and at the gain of the employer." Mutchler, 485 F.3d at 858 (holding that extra unworked hours for which a hospital employee was compensated based on her willingness to work weekend shifts did not constitute "hours of service" under the FMLA and thus the employee was not eligible for FMLA leave). Thus, to qualify as an "eligible employee" under the FMLA, [plaintiff] must prove that he actually worked 1,250 hours.

Saulsberry v. Fed. Express Corp., 552 F. App'x 424, 429 (6th Cir. 2014); see also, McArdle v. Town of Dracut Pub. Sch., 732 F.3d 29, 33 (1st Cir. 2013) ("both the applicable regulations and case law support th[e] proposition that 'hours of service' means hours actually worked"). Plaintiff has simply not shown that she actually worked 1,250 hours during the 12 months preceding either April 25 or April 29, 2012, which is an essential element for both her retaliation and interference claims.[9]

---

[9] Unlike Plaintiff, the Court does not find Defendant's FMLA policy ambiguous even though, after setting forth the 12 month/1250 hour requirements, it states in the next sentence that the "12 months need not be consecutive." This is in keeping with FMLA regulations which indicate that "[t]he 12 months an employee

10

The Court recognizes that at least with respect to the April 25, 2012 date, Plaintiff misses the requisite number of hours by the slimmest of margins. But "[t]he statutory text is perfectly clear" and "[t]he right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months." Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000). As a consequence, an employee who worked only "1,248.8" or "1,249.8" hours – "an admittedly tiny .2 hour[]" shortage – (as here) in the proceeding 12 months is not an eligible employee under the FMLA. Pirant v. U.S. Postal Service, 542 F.3d 202, 207 (7th Cir. 2008); see, Mutchler, 485 F.3d at 857 (plaintiff not an "eligible employee" where records show that she "had only worked 1,242.8 hours in the preceding year").

Even apart from failing to show that she was an "eligible employee," Plaintiff has not shown that her absences on either April 25 or April 29, 2012 were covered by the FMLA. With regard to the former, it is not clear what Plaintiff told her employer but she testified in her deposition that her granddaughter Camdynn was in the hospital and that Ashleigh and her husband stayed at the hospital while Plaintiff stayed at home taken care of her three other grandchildren.[10] As already noted,

---

must have been employed by an employer need not be consecutive months." 29 C.F.R. § 825.110(b). Nor is the fact that Defendant uses a rolling period problematic because "[e]mployers, for their part, 'are permitted to choose any of . . . [four] methods of determining the 12 month period in which the leave entitlement . . . occurs,'" including "the 'rolling' method." Thom v. Am. Standard, Inc., 666 F.3d 968, 973 (6th Cir. 2012) (quoting 29 C.F.R. 825.200(b)). As for calculating hours, "[t]he determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d).

[10] In her declaration, Plaintiff states that she was unable to attend work as a result of her "daughter's mania and mental instability" and that her daughter "could not complete any of her normal activities of daily living without direct supervision." (Docket No. 24-1 at 3, Pf. Decl. ¶ 9). Leaving aside that Plaintiff testified in her deposition that Ashleigh spent the days that Camdynn was in the hospital at the hospital which Gateway Medical Records show to be April 23-25, 2012, and that she concedes in response to Defendant's Statement of Facts that "[d]uring those days, Ashleigh stayed at the hospital while Plaintiff took care of her other three grandchildren at home" (Docket No. 24 at 11), Plaintiff's statement in her declaration that Ashleigh was unable to care for herself as of the 25th contradicts her deposition testimony that, prior to her

11

however, the FMLA does not encompass leave to care for grandchildren. Novac, 503 F.3d at 581; Brannan v. Unified Sch. Dist., 2013 WL 120163, at *5 (D. Kan. 2013) (same).

As for the absence on the 29th, Plaintiff testified that she informed a supervisor that Ashleigh was admitted to the psychiatric ward at Vanderbilt the previous day and that she would not be to work that night. Plaintiff admitted that she did not go back to the hospital that day (for her scheduled shift), arguing in her brief that "she was physically and emotionally spent and incapable of providing medical care for her 12-hour shift." (Docket No. 23 at 7). Rather, "[t]hroughout the daytime hours of 4/29/2012," she "began strategizing a plan of physical and mental health for her daughter." (Id.). This does not qualify for FMLA leave. See, Overley v. Covenant Trans., Inc., 178 F. App'x 488, 494 (6th Cir. 2006) (citations omitted) (The "FMLA does not cover every family emergency" but rather allows leave to care for a child with a serious medical condition; "routine activities do not qualify as 'physical or psychological care under the FMLA," nor does "'[m]erely vising a sick relative[] . . . fall within the statutes parameters'").

Plaintiff has not established a *prima facie* case of retaliation under the FMLA. Even if she had, Defendant has offered a legitimate, non-retaliatory reason for her discharge – ten unexcused absences in a twelve month period – which Plaintiff has not shown to be pretextual. In this regard, Plaintiff's assertion that her termination violated the terms of her final written warning fails.

In the April 5, 2012 warning, Plaintiff was informed that she had already "accumulated 7 unexcused absences in [the] rolling calendar year," that it was her "final written warning for absences" and that "another call-in will lead to termination." (Docket 17-1 at 32). After the issuance of the warning, Plaintiff had two call-ins, April 25, and April 29, 2012, and since she was neither a

---

commitment on April 28, 2012, Ashleigh could bathe herself, dress herself and groom herself. (Docket No. 30, Pf. Depo. at 56).

"qualified employee," nor were the absences covered by the FMLA her absences were properly deemed unexcused and the termination was in accordance with the final written warning. Moreover, Plaintiff's dismissal was in keeping with Defendant's written policy that provides: "If an employee accumulates seven or more 'Incidents of Absence' and/or 'Tardy' in a rolling 12-month period for any reason except an approved leave of absence, the employee will be subject to termination." (Docket No. 17-3 at 6).

### 2. Interference

"If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled," Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007), and violated the interference prong of 29 U.S.C. § 2615(a)(1). "Because an employer interferes with an employee's exercise of FMLA rights whenever the employee does not receive the rights that are due to her under the statute, the intent of the employer is irrelevant to whether an FMLA violation has occurred under the interference theory." Wallner v. Hilliard, 2014 WL 5488172, at *4 (6th Cir. Oct. 31, 2014). Still, "the FMLA is not a strict liability statute," even under the interference prong, Edgar, 443 F.3d at 508, and the Sixth Circuit has made clear that the McDonnell Douglas paradigm applies "to both . . . interference and retaliation claims" under the FMLA, Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012).

"To establish a prima facie case of FMLA interference, [Plaintiff] must show that "(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." Donald v. Sybra, Inc. 667 F.3d 757, 761 (6th Cir. 2012) (quoting, Killian v. Yorozu Auto.

13

Tenn., Inc., 454 F.3d 549, 556 (6th Cir. 2006)). "Although an employer's intent is not directly relevant to the entitlement inquiry[,] . . . interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." Grace v. USCAR, 521 F.3d 655, 670 (6th Cir. 2008) (internal citation omitted) (quoting Edgar, 443 F.3d at 507). "If the defendant proffers such a justification, then the plaintiff may seek to rebut it by a preponderance of the evidence" which "show[s] that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" Id. (quoting Wexler v. White's Fine Furniture, 317 F.3d 564, 576 (6th Cir. 2003)).

For the reasons already mentioned in relation to her retaliation claim, Plaintiff's interference claim fails. With regard to each of the absences she disputes, Plaintiff was not eligible for FMLA leave because she was either not an FMLA-eligible employee, the reason for leave was not FMLA qualifying, and/or she did not provide Defendant with sufficient notice for it to reasonably conclude the absence should have been FMLA-qualifying.

**B. THRA Claim**

In response to Defendant's Motion for Summary Judgment on Plaintiff's THRA claim, Plaintiff has provided no arguments. In fact, the THRA is not even mentioned in her response brief.

The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." Brown v. VHS of Mich., Inc., 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). When a claim is abandoned, the district court can "properly decline[] to consider the merits of th[e] claim[.]" Hicks v. Concorde Career College, 449 F. App'x 484, 487 (6th Cir. 2011). Accordingly, the Court will grant summary judgment on Plaintiff's claim under the THRA.

## IV. **CONCLUSION**

The record reflects that Plaintiff was faced with a number of unfortunate incidents in the spring of 2012. But whether Defendant could have shown more empathy towards an employee of 34 years (even one with a history of unexcused absences) or whether Defendant treated Plaintiff fairly is not for the Court to decide. See Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006) (federal court's "proper role" is to "prevent unlawful employment practices," not to "act as a 'super personnel department,' overseeing and second guessing employer's business decisions"). Rather, this Court's task is to determine whether Plaintiff has presented a triable issue of fact on her FMLA or THRA claims. Because she has not, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE